IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **RFAR Group, LLC**, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. **3:11-CV-03432-L** |
| § | |
| **EPIAR, INC., KEN JURINA, and** § | |
| **BOB VAASJO**, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Epiar, Inc. and Ken Jurina's Motion to Dismiss, filed December 16, 2012. After carefully reviewing the motions, briefing, pleadings, record, and applicable law, the court **grants** Epiar, Inc. and Ken Jurina's Motion to Dismiss on the grounds that the court lacks personal jurisdiction over them, and **denies** it **as moot** in all other respects.

**I.     Background**

Plaintiff RFAR Group, LLC ("RFAR") originally filed this action on November 8, 2011, in the 134th Judicial District Court, Dallas County, Texas, asserting state claims against Defendants Epiar, Inc. ("Epiar"), Ken Jurina ("Jurina") (collectively, "Defendants"), and Bob Vaasjo ("Vaasjo") for money had and received, unjust enrichment, constructive trust and disgorgement, and fraudulent transfer.  Epiar and Jurina removed the action to federal court on December 9, 2011.  According to Defendants' motion to dismiss, Vaasjo has not yet been served in this action.

RFAR's claims are all premised on its contention that Defendants received fraudulently transferred funds from third-party Johnny Allie ("Allie"), who created a company called Shift, LLC

("Shift"), to affect the transfer of funds from his employer Rainier Management, L.P. ("Rainier") to Defendants Epiar, Jurina, and Vaasjo without Rainier's knowledge or consent. RFAR, as the assignee and recovery agent for Rainier, seeks approximately $1,331,526.97 in damages for the amount of the option payments that Allie made to Epiar, Jurina, and Vaasjo in conjunction with Shift's contemplated purchase of Epiar. Unless otherwise noted, the facts set forth herein are not in dispute.

Rainier is a real estate investment company, and from 2010 to the beginning of 2011, Allie was Rainier's senior controller. Allie formed Shift, together with Shawn Hill ("Hill") and David Brown ("Brown"), in 2010 as a Texas company. Allie served as Shift's chief financial officer, Hill served as the company's president, and Brown was the vice president. In the summer of 2010, Allie organized a Shift "launch" party in Dallas, Texas, to attract potential investors. Pl.'s Resp. 3. Jurina, Epiar's chief executive officer, was invited to the launch party. Jurina, Allie, Hill, Brown, and others attended the launch party and related meetings over a three-day period in Dallas, Texas, in July 2010. During this time, Allie made an offer on behalf of Shift to purchase Epiar, a software marketing and development company located in Alberta, Canada. Defendants contend that they were not aware that any such offer would be made by Shift during this trip and that Jurina was not told the purpose of the meeting beforehand.

In connection with the proposed transaction, Jurina and Allie discussed proposed purchase prices. RFAR contends based on the affidavit testimony of Allie, which Defendants disputed, that the parties also agreed that if the purchase was consummated, all of Epiar's assets would be transferred to Texas, and Jurina, a resident of Alberta, Canada, would become the chief executive officer of Shift. RFAR also contends that Jurina was requested to sit on Shift's advisory board in

Dallas. At the end of the meeting, Shift signed a nondisclosure agreement, agreeing to maintain the confidentiality of Epiar's technology and financial information.[*]

In September 2010, Shift entered an option agreement to purchase Epiar that was signed by Hill and Jurina. Thereafter, from November 2010, to March 2011, Allie deposited $1,331,526.97 into Epiar's, Jurina's, and Vaasjo's bank accounts. During this time, the option period for Shift to purchase Epiar was extended; and Jurina, Vaasjo, Hill, and Brown had weekly telephone discussions regarding the status of the sale and exchanged drafts of a proposed purchase agreement that was never finalized or executed.

In July 2011, after discovering that Allie had allegedly misappropriated funds, Rainier contacted Epiar, Jurina, and Vaasjo and requested that they return or freeze the funds transferred to them pending an investigation by Rainier. Epiar contends that it told Rainier that neither it nor any of its officers, directors, or shareholders had any knowledge of Allie's alleged wrongdoing and that it merely entered an arm's length transaction for Shift's prospective purchase of Epiar. Defendants further assert that the option payments by Shift totaled approximately $1,325,000 and would have been credited toward the purchase of Shift had the deal closed. In addition, Defendants maintain that while the options were in effect, Epiar passed on offers from a number of other potential purchasers.

After RFAR brought suit in Texas state court on November 8, 2011, Epiar filed a lawsuit in Canada against Shift, Rainier, Hill, and Allie seeking to enforce Epiar's rights as a bona fide seller. Epiar and Jurina filed the instant motion to dimiss RFAR's claims based on: (1) lack of standing; (2) lack of personal jurisdiction; (3) violation of due process rights and insufficient service of

---

[*] According to RFAR, "[t]his non-disclosure agreement [and its choice of law provision] did not relate to Shift's purchase of Epiar and is inapplicable to this action." Pl.'s Resp. 4.

**Memorandum Opinion and Order - Page 3**

process; (4) failure to state a claim upon which relief can be granted; and (5) failure to plead with particularity under Rule 9(b). Defendants rely on the affidavit of Jurina. In addition to the factual allegations in its Complaint, RFAR submitted the affidavits of Hill, Allie, Danny Lovell ("Lovell"), Jennifer L. Graf (an attorney), and Brown. Attached to Allie's affidavit are copies of an option agreement, a May 2011 unexecuted purchase agreement, and information from Shift's website. Attached to Lovell's affidavit are assignments relied on by RFAR for standing purposes, and copies of wire transfers. Attached to Graf's affidavit are documents concerning service on Defendants and correspondence from Rainier's counsel to Defendants.

The court considers first defendants' challenge to subject matter jurisdiction based on RFAR's lack of standing to sue. The court then addresses the parties' arguments regarding personal jurisdiction, since this issue is dispositive of Defendants' motion.

## II.     Rule 12(b)(1) Motion to Dismiss for Lack of Standing

Defendants contend that subject matter jurisdiction is lacking because RFAR does not have standing to sue for harm allegedly suffered by Rainier. Defendants contend that RFAR's Complaint contains "[n]o clear and unequivocal statement or allegation . . . about whether Rainier alligned all rights, title and interest in its claim to RFAR or if RFAR's only interest is a mere 'byproduct of the litigation.'" Defs.' Mot. 17. RFAR counters that it has standing based on its allegations that the interests and claims of Rainier as to misappropriated funds paid to Defendants were assigned to RFAR. RFAR also submitted two executed assignments.

Article III of the Constitution "confines the federal courts to adjudicating actual 'cases' and 'controversies.' " *Allen v. Wright*, 468 U.S. 737, 750 (1984). A federal court has subject matter jurisdiction over cases "arising under" the Constitution, laws, or treaties of the United States, or in

cases where the matter in controversy exceeds $75,000, exclusive of interest and costs, and diversity of citizenship exists between the parties. 28 U.S.C. §§ 1331, 1332. Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim. *See Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Absent jurisdiction conferred by statute or the Constitution, they lack the power to adjudicate claims and must dismiss an action if subject matter jurisdiction is lacking. *Id.*; *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)).

In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a court may evaluate: (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir.), *cert. denied*, 534 U.S. 1127 (2002); *see also Ynclan v. Dep't of Air Force*, 943 F.2d 1388, 1390 (5th Cir. 1991). Thus, unlike a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court is entitled to consider disputed facts as well as undisputed facts in the record. *See Clark v. Tarrant Cnty.*, 798 F.2d 736, 741 (5th Cir. 1986). All factual allegations of the complaint, however, must be accepted as true. *Den Norske Stats Oljeselskap As*, 241 F.3d at 424.

To establish standing, a plaintiff must satisfy constitutional and prudential requirements for standing. *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001). For constitutional standing, there must be: (1) injury in fact that is concrete and actual or imminent, not hypothetical; (2) a fairly traceable causal link between the injury and the defendant's actions; and

(3) the likelihood of redressability. *See Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009). Prudential standing requirements address:

> [ (1) ] whether a plaintiff's grievance arguably falls within the zone of interests protected by the statutory provision invoked in the suit, [ (2) ] whether the complaint raises abstract questions or a generalized grievance more properly addressed by the legislative branch, and [ (3) ] whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties.

*St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 539 (5th Cir. 2009) (internal quotations and citations omitted).

RFAR alleges in its Complaint that "[t]he interests and claims of Rainier with respect to the monies misappropriated and paid to Defendants as set forth herein have been assigned to Plaintiff RFAR Group. LLC." Pl.'s Compl. 4, ¶ 17. In support of its response, RFAR also presented the affidavit of Rainier senior vice president Lovell, who states that "RFAR was assigned all of Rainier Capital's recovery rights for the unauthorized withdrawal of funds by Allie from financial accounts owned by Rainier Capital and its affiliated investment fund entities." RFAR App. 2, ¶ 6. Attached to Lovell's affidavit are the assignments referenced for "Assignment of Claims and Causes of Action" to RFAR, dated October 4, 2011. The first of these assignments is from Preferred Income Fund V.L.P. The second is from Preferred Income Partners IV, LLC. Both assignments provide that:

> Assignor does hereby sell, assign and convey to Assignee [RFAR] all of Assignor's Recovery Rights [defined as "certain rights, claims and causes of actions . . . related to or arising from the Misappropriation"] and Assignee does hereby accept the forgoing assignment. As used herein, the term "<u>Misappropriation</u>" means the unauthorized withdrawal of funds by Johnnie Allie from financial accounts owned by Assignor and its affiliate which were ultimately transferred to accounts owned or controlled by Johnny Allie, his partners and others for the purpose of making unauthorized investments and paying his personal expenses and those of other individuals.

Pl.'s App. 94, 97.  Defendants take issue with RFAR's evidence of assignments and contend that it is not sufficient to establish standing.  Defendants argue that "[b]y limiting RFAR's rights to recovering the allegedly misappropriated funds, the assignor has retained certain rights and title in those moneys such that RFAR does not have standing to bring this suit."  Defs.' Reply 10. Defendants therefore contend that the assignment in this case is analogous to that in *Shipley v. Unifund CCR Partners*, 331 S.W.3d 27, 28 (Tex. App.—Waco 2010, no pet.), where the assignee was simply assigned the right to pursue the debt.

Because RFAR, not Defendants, provided evidence of the assignments, the court will not treat these documents as being part of Defendants' challenge to subject matter jurisdiction. The court therefore treats Defendants' challenge to RFAR's standing as a facial challenge to subject matter jurisdiction, considers only the sufficiency of the allegations of RFAR's Complaint, and accepts RFAR's allegations as true.  *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Accepting RFAR's allegations as true, that RFAR received an assignment of Rainier's interests and claims with respect to the monies allegedly misappropriated by Allie and transferred to Defendants, the court determines that it has standing to sue.  The court therefore **denies** Defendants' motion to dismiss on this ground.

### III. Motion to Dismiss for Lack of Personal Jurisdiction Under Rule 12(b)(2)

Defendants have moved to dismiss on the ground that the court lacks both specific and general jurisdiction to support the exercise of personal jurisdiction over them.

#### A. Rule 12(b)(2) Standard

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a prima facie case for the court's jurisdiction over a nonresident defendant.  *See Ham*

*v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When the court rules on the motion without an evidentiary hearing, the plaintiff may establish personal jurisdiction by presenting a prima facie case that personal jurisdiction is proper, *id.*; proof by a preponderance of the evidence is not required. *International Truck and Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 556 (N.D. Tex. 2003) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)). The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Stuart*, 772 F.2d at 1192. Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). After a plaintiff makes his prima facie case, the burden then shifts to the defendant to present "a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

A federal court has jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993). Because the Texas long-arm statute extends to the limits of federal due process, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990), the court must determine whether (1) the defendants have established "minimum contacts" with the forum state; and, (2) whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice." *Ruston Gas*, 9 F.3d at 418 (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

**Memorandum Opinion and Order - Page 8**

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475. The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted). The "minimum contacts" prong of the inquiry may be subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). Specific jurisdiction is only appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Id.* at 414 n.9.

In evaluating the second prong of the due process test, the court must examine a number of factors in order to determine fairness and reasonableness, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering social policies. *Asahi Metals Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987). As noted above, "once minimum contacts are established, a defendant must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Eviro*

*Petroleum, Inc. v. Kondur Petroleum*, 79 F. Supp. 2d 720, 725 (S.D. Tex. 1999) (*quoting Burger King*, 471 U.S. at 277).  In fact, "[o]nly in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id*.  (*quoting Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)).

### B.     General Jurisdiction

Defendants contend that RFAR cannot establish general personal jurisdiction on the grounds that a defendant's conducting business in Texas is insufficient to establish general jurisdiction. Defendants further contend that Epiar's contacts with the state of Texas have not been systematic and continuous, and Defendants have not invoked the benefit and protection of Texas law.  In response, RFAR relies on Jurina's three-day trip to Texas, and the related business dealings that took place during this time and subsequently with regard to the contracts executed and negotiated between Shift and Epiar.

The continuous and systematic contacts test is difficult to meet and requires extensive contacts between a defendant and a forum. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). Even repeated contacts with forum residents by a foreign defendant have been held not to constitute substantial, continuous, and systematic contacts required to support general jurisdiction.  *Id*.  The Fifth Circuit has consistently imposed the high standard set by the Supreme Court in *Helicopteros* when ruling on general jurisdiction issues.  For example, in *Central Freight Lines Inc. v. APA Transport Corporation*, 322 F.3d 376, 381 (5th Cir. 2003), the court found no general jurisdiction even though the defendant routinely arranged and received shipments to and from Texas and regularly sent sales people to Texas to develop business, negotiate contracts, and

**Memorandum Opinion and Order - Page 10**

service national accounts. Moreover, in *Access Telecom, Incorporated v. MCI Telecommunications Corporation*, 197 F.3d 694, 717 (5th Cir. 1999), *cert. denied*, 531 U.S. 917 (2000), the Fifth Circuit emphasized that a defendant must have a business presence in Texas to confer general jurisdiction.

At most, RFAR's allegations and evidence establish only that Defendants conducted business with a Texas company and residents over a period of several months. It does not establish that either Epiar or Jurina did or is doing business in Texas for jurisdictional purposes, and there is no evidence that Defendants have ever had a business presence in Texas, other than the presence Epiar would have had if the sale of Epiar had been consummated. While "doing business in" the forum state demonstrates a defendant's business presence in the forum, merely "doing business with" the forum state or its residents does not. *See id.* The court further determines that the three days spent by Jurina in Texas to attend Shift's launch party is not the type of continuous, systematic, and substantial contacts contemplated by *Helicopteros* for the exercise of general personal jurisdiction. Moreover, there is no indication that Defendants regularly visited Texas to conduct business, or had any previous business dealings in the forum state. The court therefore determines that RFAR has failed to present a prima facie case to support general jurisdiction.

### C.  Specific Jurisdiction

RFAR does not separate its general and specific jurisdiction arguments but appears to contend that the court has specific jurisdiction over Defendants because the draft purchase agreement contains a forum selection clause that provides for dispute resolution in Texas, and the parties negotiations were directed at persons in Texas. Defendants dispute whether they agreed to venue in Texas and further note that the purchase agreement between Shift and Epiar was never finalized or executed.

**Memorandum Opinion and Order - Page 11**

For the reasons already explained, Defendants' business dealings with Shift, Allie, and the other Texas residents are insufficient to establish personal jurisdiction. Moreover, neither Rainier nor RFAR is a party to the draft purchase agreement or the other contracts entered into between Shift and Defendants. As a result, none of these contracts (or their forum selection clauses) can serve as a basis to hale Defendants into this forum. *See Burger King*, 471 U.S. at 475; *Stutzman v. Rainbow Yacht Adventures Ltd.*, 3:06-CV-0300-K, 2007 WL 415355, at *7 (N.D. Tex. Feb. 7, 2007), *aff'd*, 265 F. App'x 402 (5th Cir. 2008). The cases cited by RFAR are therefore distinguishable.

Furthermore, Shift's unilateral activities in allegedly misappropriating and using Rainier's funds to pay Defendants for the proposed purchase of Epiar are insufficient to establish jurisdiction, because RFAR does not allege and there is no evidence that Defendants participated in or had any knowledge of Shift's alleged misconduct until after the fact. *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 401-02 (5th Cir. 2009) ("Knowingly accepting a fraudulent transfer may subject a transferee to liability, but such conduct is not necessarily tantamount to committing a wrongful act purposefully aimed at a creditor of the transferor in his state of residence."); *In re Am. Int'l. Refinery v. Knight*, 04-21331-32, 2009 WL 8602809 at *11 (N.D. Tex. Dec. 22, 2009) (holding that mere receipt by defendants of a memorandum discussing potential fraudulent transfer claims that arose from prior transactions did not support the exercise of personal jurisdiction).

The court therefore concludes that the unilateral activity of third parties Allie and Shift and the conduct of Defendants relied on by RFAR does not satisfy the requirement of purposeful availment and cannot form the basis of specific jurisdiction over Defendants. For these and the other reasons explained, the court determines that RFAR has failed to present a prima facie case to support the exercise of specific jurisdiction. The court therefore **grants** Defendants' motion to dismiss on

the ground that the court lacks personal jurisdiction over them. Having determined that the court lacks personal jurisdiction over Defendants, it need not address Defendants' remaining grounds for dismissal.

## IV. Amendment of Pleadings

RFAR has requested to amend its pleadings in the event the court determines that its claims are subject to dismissal under Rule 12(b)(6). Because it was not necessary for the court to reach Defendants' arguments under Rule 12(b)(6), the court **denies as moot** RFAR's request to amend its pleadings. The court further concludes that any attempts at repleading to cure the jurisdictional deficiencies noted would be futile and therefore will not be permitted.

## V. Service on Vaasjo

Defendant Vaasjo has not yet been served in this action. The court therefore lacks personal jurisdiction over him. The court by order dated June 19, 2012, ordered RFAR to effect service on Vaasjo by 5:00 p.m. on July 19, 2012, or show cause in writing for its failure to do so. If RFAR fails to comply with the court's order regarding service, the court will dismiss the action without prejudice against Vaasjo pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

## VI. Conclusion

For the reasons herein stated, the court concludes that it does not have personal jurisdiction over Defendants Epiar and Jurina. The court therefore **grants** Epiar, Inc. and Ken Jurina's Motion to Dismiss Motion to Dismiss and **dismisses without prejudice** this action against them for money had and received, unjust enrichment, constructive trust and disgorgement, and fraudulent transfer. Epiar, Inc. and Ken Jurina's Motion to Dismiss Motion to Dismiss is **denied as moot** in all other respects.

**It is so ordered** this 20th day of June, 2012.

_____
Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order - Page 14**